# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JASEN RANDHAWA,

      Petitioner,

      v.                                    **Case No. 25-cv-403-SCD**

ROBERT MILLER,
*Warden, Racine Correctional Institution,*

      Respondent.

## DECISION AND ORDER

Milwaukee County Judge Mark Sanders sentenced Jasen Randhawa to thirty-nine years' initial confinement and sixteen years' extended supervision for killing three young women and severely injuring a fourth individual while driving drunk. Judge Sanders highlighted general deterrence as a basis for the long sentence. Randhawa moved for resentencing, arguing that Judge Sanders relied on inaccurate information regarding general deterrence. Randhawa submitted an affidavit from Dr. Ashley Nellis, a criminology expert, with research demonstrating that general deterrence is not a function of punishment severity. The court determined that Randhawa did not prove that the court had relied on inaccurate information. The court of appeals affirmed, and the state supreme court denied review.

Randhawa filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because the state court did not unreasonably apply clearly established federal law and did not rely on an unreasonable determination of the facts, I will deny Randhawa's petition and dismiss the action.

## BACKGROUND

In the early morning hours of October 23, 2016, Jasen Randhawa, driving under the influence on a revoked license, sped through a red light and crashed into another vehicle. Pet. 14, ECF No. 1. The other vehicle was an Uber carrying three passengers, all young women. *Id.* The crash killed the three passengers and severely injured the driver. *See id.* Randhawa fled the scene and turned himself in the following Monday. *See id.* The State of Wisconsin charged Randhawa with three counts of second-degree reckless homicide; one count of second-degree reckless injury; three counts of hit-and-run involving death; one count of hit-and-run involving great bodily harm; three counts of operating a motor vehicle while revoked causing death; and one count of operating a motor vehicle while revoked causing great bodily harm. Pet'r's Br. 2, ECF No. 12. Randhawa pled guilty to three counts of second-degree reckless homicide and one count of second-degree reckless injury causing great bodily harm. *Id.*

At the sentencing hearing, Judge Sanders heard testimony from the victims' and Randhawa's families and Randhawa, and arguments from counsel. *See generally* Sentencing Tr., ECF No. 6-9. Judge Sanders described looking into the audience and seeing "just a sea of people who are suffering, in different ways but just a genuinely an ocean of suffering." *Id.* at 140:1–3.

Judge Sanders characterized the circumstances of the offense as at top-end of the aggravated range. *Id.* at 141:1–3. Judge Sanders described Randhawa's character as complex; Randhawa was 23 at the time of the crash, pursued some college, had worked at his family's business, and benefitted from family and community support. *Id.* at 149–51. On the other hand, his first instinct had been to deceive and evade capture, and he had a prior OWI offense.

*Id.* at 154:13–17, 157:21. Judge Sanders then addressed the needs of the public through general deterrence. He said:

> [A]nother aspect of protection of the public, in fact, a significant aspect of protection of the public is general deter[r]ence, and that's a particularly important aspect in cases like this . . . because many times these people that commit drunk driving offenses are more like you than they are like the other people that sit in that chair sometimes.
>
> They tend to be better educated, they may not have prior criminal histories. They may just drive drunk. The only way that I can protect the public fully is by crafting a sentence in this case that is sufficient to cause other people to be aware of the consequences of drunk driving more fully so that they know and that they may think when they're at a bar with some friends, you know, I'm just going to drive home, the hope is that there -- that it will go through their heads, well, damn, that Randhawa -- that Randhawa guy, he killed some pokes -- some folks, that was terrible and then he went to prison for a long time, I'm not gonna do that. That's how public protection can be achieved. The hope is that there will be fewer crime victims in the future. . . . That's how the public can be protected, by making fewer crime victims.

*Id.* at 159:4–160:14.

Judge Sanders sentenced Randhawa to eleven years' initial confinement followed by four years' extended supervision for each reckless homicide count, and six years' initial confinement followed by four years' extended supervision for the reckless injury count, to be served concurrently. *Id.* at 164:25–165:19. In total, that's thirty-nine years' initial confinement and sixteen years' extended supervision. *Id.*

Randhawa filed a postconviction motion for resentencing raising multiple issues. *See* Pet. 13. Relevant to his habeas petition, Randhawa argued that the court relied on inaccurate information regarding general deterrence. *Id.* Randhawa submitted an affidavit from criminology expert Dr. Ashley Nellis, which represented that severe sentences are ineffective for general deterrence, especially for alcohol-related crimes. *See id.* at 15.

Judge Sanders stated the standard: "A defendant who requests resentencing based on inaccurate information has the burden of demonstrating by clear and convincing evidence that the information was inaccurate and that the court actually relied on it." *Id.* Applying this standard, Randhawa had not demonstrated that the court relied on inaccurate information. The court's comments about general deterrence "constitute a fundamentally subjective judgment on one of the sentencing factors delineated in *Gallion*; it is not an objective fact that is capable of being true or untrue." *Id.* at 16. The court concluded that Randhawa could not "demonstrate that the court relied on inaccurate information merely by offering a differing perspective from an 'expert' related to one or more of the court's sentencing objectives." *Id.* Because Randhawa didn't meet his burden, the court did not address the strength of Dr. Nellis's affidavit. *See id.* at n.2.

The court of appeals affirmed. The court stated the standard: "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." *Id.* at 24 (quoting *State v. Tiepelman*, 2006 WI 66, ¶ 9, 717 N.W.2d 1). The court opined on the use of social science in sentencing:

> The sources Randhawa relies on, which include an expert's opinion and citations to journal articles, cannot define the bounds of a constitutionally appropriate sentence appropriate sentence. *See generally State v. Roberson*, 2019 WI 102, ¶¶37-38, 389 Wis. 2d 190, 935 N.W.2d 813 (holding that "social science research cannot be used to define the meaning of a constitutional provision" and adding that "[i]t is the legislature that is structured to assess the merits of competing policies and ever-changing social science assertions"). In its decision resolving Randhawa's postconviction motion, the circuit court noted: "The differing view of an expert does not render the court's determination inaccurate." We agree. Differing opinions about the circuit court's sentencing objective of general deterrence does not constitute inaccurate information so as to allow for resentencing under *Tiepelman*."

4

*Id.* at 27–28. The court of appeals affirmed that Randhawa's due process claim failed because the trial court did not rely on inaccurate information. *Id.*

In his petition for certiorari to the Supreme Court of Wisconsin, Randhawa asserted that he had presented unrefuted evidence that social science had universally recognized that long sentences do not deter crime. *See* ECF No. 6-4 at 21–22. Neither the sentencing court, the court of appeals, nor the state had responded to the substance of the Dr. Nellis affidavit. *See id.* at 21. Randhawa argued that the court of appeals "avoided both prongs of the due process test by totally ignoring the underlying fact that severe sentences do not deter crime." *Id.* at 23. Randhawa highlighted the court of appeals' statement that social science cannot define the bounds of a constitutionally appropriate sentence as "both erroneous and unsettling." *Id.* at 24. In this section of the petition, Randhawa cited federal and state cases discussing courts' use of social science in sentencing and framed the issue as a due process right. *See id.* at 22–26.

The Supreme Court of Wisconsin denied certiorari, and Randhawa's habeas petition followed. *See* Pet., ECF No. 1. The case was re-assigned to me when all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 7, 8. Robert Miller, the warden who has custody of Randhawa, initially moved to dismiss the petition for lack of prosecution when Randhawa missed a deadline. *See* ECF No. 10. Randhawa submitted an untimely brief in support of his habeas petition, so I denied the motion to dismiss and set new deadlines. *See* ECF No. 14. Miller submitted a brief in opposition to the petition for habeas relief, and Randhawa did not submit a reply. *See* ECF No. 15.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). For claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014).

"A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the United States Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 405 (O'Connor, J., concurring in part). Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08.

A writ of habeas corpus may not issue "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838

6

F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams*, 529 U.S. at 411). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015). To obtain relief under 28 U.S.C. § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

## DISCUSSION

Randhawa raises two grounds for habeas relief. First, the sentencing court violated Randhawa's right to due process by relying on inaccurate information. Specifically, the court believed that a longer sentence would provide general deterrence when, in fact, it is merely

7

the threat of getting caught—not the length of a sentence—that deters crime. Second, the court of appeals violated Randhawa's right to due process by its "categorial refusal to address social science information in sentencing." Pet'r's Br 13. Stated differently, "it is not the failure to be persuaded by the information provided by Dr. Nellis but the failure to consider that information that is a due process violation." *Id.* at 14. I will phrase this issue another way by removing the double negative: due process required the court to consider the substance of the Dr. Nellis affidavit.

Miller argues that the second issue is not cognizable on habeas review because sentencing factors are a state law issue. Even if cognizable in habeas, it was not exhausted in state court. Regardless of those procedural questions, Miller asserts that the court of appeals did not unreasonably apply clearly established federal law or rely on an unreasonable view of the facts; lastly, even if the court of appeals commit constitutional error, law and justice do not require relief. *See* Resp't's Br. 2, ECF No. 15.

**I.      Randhawa's "failure-to-consider" claim was not exhausted in state court.**

Before addressing the merits, I must determine what claims are properly before me. Randhawa must exhaust his claims in state court before seeking habeas relief. "Before seeking relief in federal court, a habeas petitioner must first give the State the opportunity to address and correct any alleged violation of his federal rights." *Brown v. Eplett*, 48 F.4th 543, 552 (7th Cir. 2022); *see also* 28 U.S.C. § 2254(b) & (c). This means that the petitioner "must fairly present his federal claim through one complete round of review in state court, 'thereby alerting that court to the federal nature of the claim.'" *Brown*, 48 F.4th at 552 (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). "Fair presentment . . . does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and

8

legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001)).

Miller has argued that Randhawa's second issue—that the courts' failure to consider Dr. Nellis' opinion violates due process—is unexhausted. Randhawa did not reply to Miller's brief to address this problem. To the extent that Randhawa argues that the second ground is a separate constitutional violation committed by the court of appeals, the respondent is correct that this claim was not exhausted in state court. "Submitting a new claim to a state's highest court on discretionary review does not constitute a fair presentation." *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990). Even so, because the two arguments are essentially two sides of the same coin, I will address the due process arguments on their merits below.

## II.     Randhawa's claims fail on the merits.

Randhawa's due-process claims fail on the merits under the highly deferential habeas standard. For claims adjudicated on the merits in state court, a federal court evaluates "if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d at 888.

A criminal defendant has a due process right to be sentenced based on accurate information. *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 865–66 (1984) (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). To establish this violation, a defendant "must show both that information before the sentencing court was inaccurate and that the sentencing court relied on the inaccurate information in the

sentencing." *Lechner v. Frank*, 341 F.3d 635, 639 (2003). "[N]ot all inaccuracies deprive a defendant of due process; the incorrect information must be 'materially untrue.'" *McDowell v. Pollard*, No. 17-CV-1267, 2019 WL 4644003, 2019 U.S. Dist. LEXIS 162714, at *7 (E.D. Wis. Sep. 24, 2019) (quoting *Promotor*, 628 F.3d at 888 (7th Cir. 2010)); *see also Spencer v. Meisner*, 731 F. Supp. 3d 1066, 1074 (E.D. Wis. 2024).

Here, the court of appeals followed *Tiepelman*, which incorporated the federal standard set forth in *Tucker*. *See* Pet. 24; *State v. Tiepelman*, 2006 WI 66, ¶ 9, 717 N.W.2d 1 (citing *Tucker*, 404 U.S. at 445; *Welch v. Lane*, 738 F.2d at 864). The court of appeals applied the correct standard, so its decision was not contrary to federal law. *See Lechner v. Frank*, 341 F.3d at 639. "Because the court proceeded under the appropriate legal standard, we next turn to whether the [state court's] application of the law to the facts was unreasonable." *Id.* at 639.

The essence of the petitioner's argument is that the judge was wrong in believing that longer sentences provide general deterrence, and that the wrongness of his opinion is demonstrated by Dr. Nellis' affidavit, which relies on fact-based studies. Here, the petitioner complains about the following statements made by the judge:

> People who commit drunk driving offenses "tend to be better educated, they may not have prior criminal histories."
>
> "The only way that I can protect the public fully is by crafting a sentence in this case that is sufficient to cause other people to be aware of the consequences of drunk driving more fully[.]"
>
> "The hope is that there will be fewer crime victims in the future."
>
> "That's how the public can be protected, by making fewer crime victims."
>
> Sentencing Tr. 159:4–160:14, ECF No. 6-9.

Boiled down, all of these statements reflect the judge's belief that a stiff sentence was required in order to get the public's attention and possibly deter others from similar conduct. First, I note that it is impossible to refute the judge's statements here. The judge, after all, was not expressing a statement about a historical or academic fact, he was expressing a hope about the *future*—namely, that the sentence in *this* case would cause more people to become aware of the dangers of drunk driving. Even if Dr. Nellis could point to studies showing that the public typically has *not* been moved in the past by longer sentences, that is simply a statement about the past or, at best, what is typical. This does not mean longer sentences *never* deter, and neither does it mean it would be impossible that a longer sentence would prove fruitless in *this* case. Human beings are not automatons, predestined to follow sociological trends. And, of course, Dr. Nellis could not purport to opine about the specific individuals in the petitioner's community who might very well be influenced by the stiff sentence Judge Sanders handed down. In sum, the petitioner has not identified any statements or beliefs underlying his sentence that were factually incorrect.

Caselaw is clear that a sentencing judge relying on his own experience does not violate the due process clause, even if the judge's experience does not necessarily dovetail with reliable statistics. In *Simonson v. Hepp*, 549 F.3d 1101 (7th Cir. 2008), for example, the sentencing court discussed his sense of high recidivism rates for child molestation generally, but recidivism rates were actually lower for the defendant's particular crime of *incestuous* child molestation. *Simonson v. Hepp*, 549 F.3d 1101, 1107 (7th Cir. 2008). The Seventh Circuit rejected the argument that the judge relied on inaccurate information. "[T]he sentencing judge here did not rely on any hard statistical data; he did not consult recidivism studies or charts but rather based his view on his own 'experience' in these sorts of cases." *Id.* A sentencing

11

judge can rely on his own experience. *See id.* (quoting *Barclay v. Florida*, 463 U.S. 939, 950 (1983) ("[i]t is neither possible nor desirable for a person to whom the State entrusts an important judgment to decide in a vacuum, as if he had no experiences.")). The sentencing judge relied on "something," but the defendant failed to prove that the "something" was inaccurate information. *See id.* at 1108.

A counterpoint to the present case is found in *United States v. Adams*, 873 F.3d 512, 519 (6th Cir. 2017), where the sentencing court committed error by *relying* on social science research. This "evidence" turned out to be unreliable. *See id.* The Sixth Circuit warned that incorporating scientific studies as a basis for a sentence may introduce inaccurate information in violation of the due process clause. *See id.* at 519–20. The Sixth Circuit concluded that the sentencing court violated the defendant's due process rights by "relying on unreliable claims about the minimum amount of time needed to rehabilitate a drug addict." *Id.* at 523. The takeaway is that although a judge could commit error by relying on or misapplying social science research, the same judge does *not* generally commit error by relying on his own experience and / or refusing to consider academic evidence.

Here, the court of appeals found that Judge Sanders's statements were not inaccurate information. That conclusion is a reasonable application of federal precedent. Randhawa has not identified a case in which a judge's opinion statements about enumerated sentencing factors were deemed so inaccurate that they warranted relief. Nor has he supplied a case suggesting that sentencing judges (or reviewing courts) must consider expert opinions on matters of sentencing efficacy. Accordingly, I conclude that the court of appeals' decision did not unreasonably apply of clearly established Supreme Court precedent, and it was not based

on an unreasonable determination of the facts. For those reasons, Randhawa's claims fail on the merits.

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, I do not believe reasonable jurists could find the merits of Randhawa's claim debatable. As noted above, the petitioner has not even identified a factually inaccurate statement uttered by the judge, as no amount of academic research could undermine the judge's expressed hope that a long sentence could provide deterrence value in this specific case. Similarly, petitioner has identified no constitutional provision requiring courts to consider social science research under the circumstances presented by this case. Accordingly, I will deny a certificate of appealability.

**CONCLUSION**

For the reasons stated above, the court **DENIES** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody, ECF 1; and **DISMISSES** this action. The court **DENIES** the petitioner a certificate of appealability. The clerk of court shall enter judgment denying the petition and dismissing this action.

13

**SO ORDERED** this 21st day of April, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge